

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-2006

# USA v. Zaku

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2349

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Zaku" (2006). *2006 Decisions.* Paper 1248.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1248

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 05-2349
_____

UNITED STATES OF AMERICA

v.

XHENGIZ ZAKU,

Appellant

_____

On Appeal from a Final Judgment of Conviction and Sentence of the United States
District Court for the District of New Jersey
(D.N.J. Criminal No. 04-cr-00751-1)
District Judge: Hon. Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
April 18, 2006

BEFORE: SLOVITER, AMBRO, and MICHEL,[*] Circuit Judges.

(Filed: April 19, 2006)

_____

OPINION
_____

MICHEL, Circuit Judge.

　　Xhengiz Zaku appeals only the sentencing aspect of an April 21, 2005 final judgment

---

[*] Honorable Paul R. Michel, Chief Judge, United States
Court of Appeals for the Federal Circuit, sitting by
designation.

by Judge Jose L. Linares of the United States District Court for the District of New Jersey. For the reasons given below, we affirm the district court's judgment.

BACKGROUND

In or about 2002, Xhengiz Zaku, an adult male, conspired with a friend of his, Neat Osmani, an adult male, to distribute more than five kilograms of cocaine and smuggle the cocaine into Macedonia. The government conceded that the "kingpin of the drug importation scheme" was Lado Istrefi, Osmani's uncle, who lived in Macedonia. The government agreed that Istrefi recruited his nephew Osmani and that Osmani, in turn, recruited Zaku. In April 2002, Zaku and Osmani together "approach[ed]" B.I.,[1] a male then fifteen years old, and Sedat Sulejmani, an adult male, and "ask[ed]" them to assist in the drug smuggling operation. Zaku later "retrieve[d]" the airline tickets for B.I.,[2] delivered the tickets to B.I., and "help[ed] drive" B.I. to the airport , where B.I. was supposed to fly from Newark to Aruba, where he and Sulejmani would procure the cocaine, and from Aruba to Norway, where they would deliver the cocaine to Istrefi or one of his associates (whereby the cocaine would then be smuggled into Macedonia). As part of the plan, Zaku also took B.I. to a department store to purchase clothing for B.I. to be used during and for the smuggling operation.

After B.I. and Sulejmani arrived in Aruba, they were arrested. B.I. cooperated with

[1]The initials of the minor, B.I., are being used to protect his privacy.

[2]Zaku also approached Sulejmani. The issue on appeal, however, is whether Zaku used a minor, namely, B.I., in the conspiracy. Thus, our discussion focuses on B.I.

2

police to effect the arrest of Zaku.  On October 18, 2004, Zaku pled guilty to a "conspiracy to distribute [a] controlled substance (cocaine)."  This resulted in a base sentencing level of 33 and a reduction to level 29 for other factors, according to the sentencing guidelines.[3]  In addition, Zaku offered substantial assistance to the government that led to the arrest of Osmani.

Because of Zaku's substantial assistance, the government moved for a downward departure of 3 levels to level 26.  The district court granted the government's motion based on its analysis and weighing of the five factors outlined in section 5k1.1 of the United States Sentencing Guidelines.  During the sentencing hearing, the court recited all five 5k1.1 factors, stated that it considered and weighed the factors, discussed its analysis of the five factors, and explained why it granted the government's motion based on the factors.  In her Presentence Investigation Report, the Probation Officer calculated the total offense level with a 2-level increase because Zaku used a minor in the conspiracy. This 2-level increase was included in the base sentencing level of 33.  In a letter to the Probation Officer, Zaku objected to the enhancement, asserting that he did not use a minor.  The trial court denied the "motion" because it found that Zaku did use a minor.  Thus, after the downward departure, the trial court set Zaku's sentencing level at 26, which carries a sentence range of 63 to 78 months.  On April 21, 2005, the trial court sentenced Zaku to the lowest time in that range,

---

[3]Zaku was given a 2-level reduction because "no aggravating role [was] applicable" to Zaku, as the trial court found that he was "not an organizer or leader of this particular criminal activity."  He was also given a safety valve reduction of 2 levels.

63 months. On May 25, 2005, Zaku surrendered to commence serving his sentence.

On appeal, Zaku argues that the trial court erred because it "misapplied the [sentencing] guidelines, misunderstood the legal standard for departures, and failed to consider properly the relevant factors regarding substantial assistance." He also argues that the trial court erred by finding that he used a minor in the conspiracy. We conclude that the trial court did not err in interpreting and applying the law and considering all of the factors. We also hold that the trial court did not err in finding that Zaku used a minor in the conspiracy. Thus, we affirm the trial court's judgment.

## DISCUSSION

### A

As a preliminary matter, the government asserts that this Court does not have jurisdiction over one aspect of this appeal, namely, the downward departure for substantial assistance, because a defendant may not appeal the extent of a downward departure, which is given at the discretion of the judge. Thus, the government asserts, Zaku's appeal on this issue is dismissible for lack of jurisdiction. Zaku responds that he is not merely appealing the extent of the downward departure and, thus, his appeal falls within the jurisdiction of this Court. United States v. Khalil, 132 F.3d 897, 898 (3d Cir. 1997). Zaku is correct that a defendant may appeal a sentence that "was imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(2). Because Zaku is challenging the application of the guidelines and the consideration of all guideline factors, we believe that this Court has jurisdiction under (a)(2) and we will analyze this appeal on the merits.

4

B

Zaku asserts that the trial court erred as a matter of law because it misunderstood and misapplied the law. Yet, other than these general allegations, he fails to explain how the guidelines were misapplied. Indeed, he quotes the trial court's analysis and application of the five factors during the sentencing hearing and recites what the trial court did state as to each factor, showing that the trial court did consider the factors. Thus, while he claims that the court misunderstood and misapplied the law, he actually is merely contesting the weighing of the factors and the result that the offense level was reduced "by only three levels."

The government responds that the trial court did correctly apply the guidelines and consider each factor in its analysis, as shown by the trial court's specific discussion of the five factors in the sentencing transcript. We agree with the government.

Regarding the second factor (the "truthfulness, completeness, and reliability" of Zaku's information), although the trial court did not explicitly discuss this factor, it implicitly found Zaku's information truthful, complete, and reliable. Otherwise it would not have considered it and granted the downward departure based on it.

As to the fourth factor, any "danger or risk of injury to the defendant or his family," Zaku states that "there is literally no mention of the danger or risk to not only the defendant, but to his family, as well." Yet Zaku did not present any supporting evidence prior to or at the sentencing hearing. For the first time on appeal, he now submits supplemental evidence alleging that "[t]hreats to the defendant were made telephonically," that Zaku himself was

5

"physically assaulted on one occasion," and that Zaku's car "was vandalized." The trial court could not have erred regarding this 5k1.1 factor because no such evidence was before the trial court.[4]

C

Zaku also alleges that the trial court erred in finding that he "used" a minor in the conspiracy because he did not "decide" to use B.I., the minor. Rather, he states, Istrefi and Osmani "decided" to use the minor and Zaku merely "accepted" their decision. The government counters that Zaku's sworn admission during his plea hearing that he "approach[ed]" and "ask[ed]" B.I. to join the conspiracy, "retrieve[d]" airline tickets for B.I., and "help[ed] drive" B.I. to the airport so that B.I. could pick up the cocaine in Aruba and "deliver" it in Norway proved "use" of a minor within its statutory meaning. We agree.

The United States Sentencing Guidelines define "use" of a minor as "includ[ing] directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting or soliciting." U.S.S.G. 3B1.4, Appl. Note 1. Indeed, we have explained that section 3B1.4 merely requires "some affirmative act. . . ." United States v. Pojilenko, 416 F.3d 243, 247 (3d Cir. 2005). The admitted acts clearly constitute "some affirmative act beyond mere joint participation in a crime with a minor. . . ." Pojilenko, 416 F.3d at 247. Thus, Zaku "used"

_____

[4]Moreover, we cannot consider this evidence now, for the first time on appeal. See, e.g., In re Capital Cities/ABC, Inc's Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990) (holding that an appellate court "cannot consider material on appeal that is outside of the district court record").

B.I., a minor, in the conspiracy, within the meaning of section 3B1.4.

For the foregoing reasons, we affirm the judgment of the trial court.